613 So.2d 752 (1993)
STATE of Louisiana
v.
Henry McNEIL.
No. 91-KA-2265.
Court of Appeal of Louisiana, Fourth Circuit.
January 28, 1993.
*754 Harry F. Connick, Dist. Atty., Lisa A. McLachlan, Asst. Dist. Atty., New Orleans, for the State of La.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for Henry McNeil.
Before CIACCIO, WARD and ARMSTRONG, JJ.
WARD, Judge.
Henry McNeil was charged with distribution of crack cocaine. After a trial the jury found him guilty as charged. The trial court sentenced him to twenty years at hard labor. He contends numerous trial errors led the jury to an erroneous verdict of guilty, and he asks this court to reverse his conviction and sentence. We do not find trial error, and we affirm his conviction and sentence.
*755 In one allegation McNeil contends that the trial court erred in denying his motion for continuance based on his trial counsel's lack of preparation because of the State's failure to provide forty-eight hours notice of trial. Trial counsel based the motion on this Court's order in In Re Indigent Defendants, unpub. (91-K-1239, La.App. 4 Cir. June 28, 1991) wherein this Court stated:
Considering the Louisiana Supreme Court's decision in State v. Simpson, 551 So.2d 1303 (La.1989), the prosecutor is ordered to notify the indigent defense counsel within a reasonable time before trial (but not less than 48 hours) of the order in which the cases will be called for trial when more than one case is set for trial on a particular day.
McNeil's trial counsel argued, as did counsel in In Re Indigent Defendants, supra, that there were so many cases set for trial at which he is to serve as the indigent defender, that he could not possibly be prepared. In In Re Indigent Defendants the defense counsel (who was defense counsel at trial in the instant case) averred that the district attorney had informed him on the afternoon before trial that if the State was unable to proceed in two scheduled trials, it would try one of his eight cases. This court later denied writs based on a response by the district attorney that he had verbally informed defense counsel of the first four cases to be tried.
In this case, as in In Re Indigent Defendants, the district attorney claims that he told defense counsel on the day before trial that the State intended to proceed with two armed robberies, and in the event those cases were not ready for trial, the State would proceed with the case against McNeil. Therefore, just as in the case of In Re Indigent Defendants, we find that defense counsel was adequately notified so that counsel could prepare this case for trial. Additionally, by the time this trial began, nineteen months had passed since the filing of the bill of information, the case was continued ten times, and a previous trial in this case ended in mistrial. Certainly there is no reason why defense counsel could not be prepared for trial. Moreover, McNeil did not show he was prejudiced by the denial of the motion for continuance. We find no error in the trial court's refusal to grant a continuance.
In another argument McNeil contends the State used each of its six peremptory challenges to exclude a black juror, thus he argues that black jurors were systematically excluded from the jury, denying him due process and equal protection. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State v. Thompson, 516 So.2d 349 (La.1987), cert. den. Thompson v. Louisiana, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). In Thompson, the Louisiana Supreme Court stated, "To establish a prima facie case under Batson, the defendant must show that he is a member of a cognizable racial group and that the State has exercised peremptory challenges to remove members of his race from the petit jury." Id. at 353. A "cognizable racial group" as defined by the United States Supreme Court in Casteneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) is "one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or applied." Once the prima facie showing has been made by the defendant under Batson, the burden shifts to the state to put forth a neutral explanation for challenging black jurors. Batson, supra; Thompson, supra.
In this case, the trial court found a prima facie showing of the exclusion of jurors based on race. He conducted a hearing in chambers wherein the prosecutor stated he dismissed one juror who was nineteen and who shook his head in disagreement with the prosecutor during voir dire, and another who had just sat on a hung jury and had a felony arrest and a amunicipal arrest. He dismissed a third because she was related to a prosecutor, and three others who were inattentive and nonresponsive. The trial court accepted the State's explanation, found the State had borne the burden to prove challenges were not motivated by juror's race, and denied McNeil's motion to discharge the jury.
*756 This decision is largely a factual one, made by a trial court judge who has the benefit of seeing and hearing voir dire questions of the prosecutor and listening to answers of the prospective jurors. The trial judge can best judge the courtroom atmosphere and the demeanor of attorneys and prospective jurors. In such factual questions we must defer to the trial court, relying upon his perceptions, unless the record indicates that any reasonable trial court must reach the conclusions that the prosecutor exercised peremptory challenges on the basis of a juror's race alone. In this case we cannot say the trial court erred in finding that the State had exercised its challenges for reasons other than race. This assignment is meritless.
Other alleged errors require knowledge of the evidence. The trial testimony showed that after the New Orleans Police Department received a citizen complaint that drugs were being sold at the intersection of Chef Menteur and Dale Street Officer Warren Riley was assigned to investigate the complaint. Dressed in civilian clothes and covered by Detectives Saccente and Nides in another car, Riley drove to the area. Henry McNeil flagged down Officer Riley's car in the 4300 block of America Street and asked Officer Riley if he was looking for "rocks". The officer responded that he wanted a $10 piece, whereupon McNeil took the money and instructed Riley to drive to the intersection of Chef Menteur and Dale. At the designated location McNeil walked up to a group of four black males, had a brief conversation, and returned with a small piece of crack cocaine.
After the transaction, while keeping McNeil under constant surveillance, Riley radioed Saccente and Nides, and gave them a description of McNeil. Saccente and Nides then arrested McNeil, and in a search incidental to the arrest the officers discovered in McNeil's pocket a glass smoking pipe commonly used to smoke crack. They did not find drugs or money.
McNeil contends the trial court erroneously sustained the State's objections to an otherwise permissible opening statement by his counsel. During opening statement defense counsel stated that the jury would learn, during the course of the trial, how "secret" police operate in the United States. The Court sustained the State's objection to the statement. Defense counsel corrected himself and began speaking about how "the undercover police" work in the United States. Again, the State objected and the trial court ordered defense counsel to limit his opening statement to evidence he intended to present at trial. The defendant contends the court erred in sustaining the State's objections. We disagree.
While the code does not specifically limit the scope of the opening statement of defense, the very nature of an opening statement, given before any evidence is introduced, means that the defense is bound by the same rule; it must limit its opening statement to an explanation of what it intends to prove. State v. Bell, 263 La. 434, 268 So.2d 610 (1972). Counsel's remarks were clearly his opinions, not explanations of what he would prove, matters which arguably may be used in closing arguments, but clearly not permissible in an opening statement. The trial court did not err.
McNeil argues that a series of remarks by the trial court directed at defense counsel and the court's comments on the evidence in the presence of the jury irremediably prejudiced the defendant. The record shows the trial court either sustained a State objection or directed defense counsel's course, in the absence of a State objection, when defense counsel persisted in repetitive questioning. In none of the instances complained of did the trial court comment on the evidence. The trial court was correct in its rulings.
During the qualification of Officer William Sable as an expert in fingerprint identification, after the parties agreed to a stipulation that Sable was indeed an expert, the trial court suggested to the prosecutor that he let Sable finish testifying to his background. While the State is indeed in charge of putting on its own evidence, Sable's background was relevant and important *757 for the jury's consideration of what weight to give his testimony. Once the court suggested to the State that it elicit further testimony on Sable's credentials, the prosecutor interrogated the witness. In making the suggestion, the trial court did not abandon its neutral role.
On recross of Sable, defense counsel tried to elicit testimony that a man named Isaah Jones, a known cocaine dealer, used the defendant's name, Henry McNeil, as an alias. Defense counsel attempted to introduce documentation involving an earlier conviction of Jones including the bill of information, a docket master, and a waiver of constitutional rights form. Following an in chambers conference with all counsel, the trial court refused to admit the documents into evidence. In so doing, the trial court was correct since the documents were totally irrelevant to the cross examination of Sable as a fingerprint expert, and the defendant's name was never an issue in his identification as the perpetrator. The trial court did not comment on the evidence when it refused to admit the documents.
Continuing, McNeil argues the trial court erred in several rulings it made in closing arguments of the State and the defendant. The trial court required the defense counsel to retract a statement that five witnesses were paid by the State to testify the defendant committed the crime. The court did not err when it demanded the retraction. The State does not pay police officers to testify falsely that an individual is guilty. Second, the defendant maintains that the trial court erred in not allowing the defense to argue evidence that Isaah Jones was using the defendant's name as an alias. As previously discussed, the use of the name "Henry McNeil" was not a factor in the identification of the defendant, and it was not part of the evidence. The defendant was not identified because his name is Henry McNeil. He was identified based on his being the man who sold Officer Riley cocaine. The court did not err in not allowing the argument. Third, defense counsel argues that the trial court improperly sustained a State objection when, at the close of defense counsel's argument he stated "Normally at the time when defense counsel sits down, we get subjected to an assault, a personal assault." Defense counsel's comment is not proper argument based on evidence. As a matter of fact counsel's comment was an objectional inappropriate remark which itself appears to be a personal slur. The trial court did not err. Fourth, defense counsel argues the trial court erred in overruling defense counsel's objection that the prosecutor be required to use the microphone. The trial court rules that the prosecutor did not have to use the microphone unless the jury was having difficulty hearing him. The trial court's ruling was correct. Fifth, defense counsel argues the trial court erroneously overruled his objection to the State's rebuttal argument that the defense was trying to create a smokescreen to obscure the real issues of the case by introducing evidence of confusing facts. The jury could only have properly concluded that this was nothing more than the State's opinion of the evidence, and as argument it was a legitimate comment on the evidence. Finally, the defense argues that the trial court prejudiced the defendant when it suggested the case would be heard on appeal, thereby implying that the defendant's conviction would be upheld. In reality, the trial court merely stated that defense counsel's objections would be adequately reserved for appeal. Nevertheless, comments that may indicate to the jury that it is not the final voice in the matter are objectionable. However, in this case we find any error to be harmless error beyond a reasonable doubt. There is no evidence the trial court abandoned its neutral role. Moreover, there was overwhelming evidence of the defendant's guilt and even assuming for arguments sake there were improper remarks by the trial court, there is no indication they influenced the jury or contributed to the verdict. These arguments are without merit.
McNeil also argues the trial court erred when it curtailed cross examination of two State witnesses, thus limiting his right to present a defense. He also *758 alleges bias on the part of one State witness. McNeil's counsel questioned Officer Riley as to why the substance purchased from the defendant was described in the police report as powdery where in reality the cocaine was in rock form. Riley agreed that the cocaine was in rock form and was not powdery. He admitted the police report erroneously described the cocaine as powdery but said the error was a typographical one that could not be corrected once it was in the police file. Defense counsel persisted and asked Riley if he could spell the word "powder". The trial court sustained the state's objection because defense counsel was becoming increasingly repetitive in his questioning. The trial court did not err. Defendant argues that the trial court impermissibly curtailed his cross examination of Officer Nides. Nides testified that after Officer Riley identified McNeil that Nides arrested and handcuffed him. Defense counsel then asked why Riley did not come over and identify the defendant after he was handcuffed. Nides testified that Riley had already identified him. The trial court then asked defense counsel if he was listening to the testimony. Defense counsel persisted in his interrogation and Nides testified that Riley did not come over to where the defendant was handcuffed because the police were planning on making more narcotics transactions in the area and did not want Riley's identity revealed. Defense counsel again persisted asking questions on the subject of why Riley did not identify the defendant a second time and the trial court told him to move on. Here again, counsel's questions were becoming repetitive. The trial court did not err.
The final assignment addresses the issue of excessive sentence.
Article I, Section 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is within statutory limits. State v. Cann, 471 So.2d 701 (La.1985). The imposition of a sentence, although within the statutory limit, may be unconstitutionally excessive if it is "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). In order to insure adequate review by the appellate court, there must be an indication in the record that the trial court considered both the aggravating and mitigating factors set forth in C.Cr.P. art. 894.1 in determining the defendant's particular sentence. State v. Sherman, 557 So.2d 997 (La.App. 4 Cir.1990).
In this case, the trial judge referred to C.Cr.P. art. 894.1(A) & (B). He noted the defendant's age, 32, his profession, bricklayer, and that he is single with no dependents. He found no mitigating or extenuating circumstances. He considered the defendant's criminal history which revealed several minor arrests and two convictions: one guilty plea in 1987 to possession of marijuana, and one guilty plea in 1981 for forcible rape. The trial court complied with article 894.1.
Here, although McNeil distributed a small amount of crack cocaine, he has been previously convicted of possession of narcotics and rape. Under these facts, we hold that the defendant's sentence of twenty years at hard labor is not excessive.
AFFIRMED.