HANS J. LILJEBERG, Judge.
|aDefendant seeks review of his conviction and sentence for failure to register as a sex offender in violation of La. R.S. 15:542. For the following reasons, we affirm.

Procedural History

On August 16, 2013, the Jefferson Parish District Attorney’s Office filed a bill of information charging defendant, Denis Flores, with failure to register as a sex offender in violation of La. R.S. 15:542. On August 19, 2013, defendant pleaded not guilty at arraignment. Thereafter, defendant filed omnibus motions, including a motion to declare La.C.Cr.P. art. 782 unconstitutional, which the trial court denied. On February 12, 2014, after a two-day trial, a 12-person jury found defendant guilty as charged. On March 21, 2014, the trial court denied defendant’s motions for post-judgment verdict of acquittal and new trial. The trial court thereafter sentenced defendant to imprisonment at hard labor for a term of three years to be served without benefit of parole, probation, or suspension of sentence.
|aThe State filed a multiple bill of information alleging defendant to be a third felony offender. On March 31, 2014, following a hearing, the trial court adjudicated defendant a third felony offender. The trial court vacated defendant’s original sentence and resentenced him pursuant to La. R.S. 15:529.1 to eight years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The trial court ordered that the sentence run concurrently with any other sentence defendant was serving. On that date, the trial court granted defendant’s timely motion for appeal. Defendant’s appeal follows.

*805
Facts

Officer Brad Thibodeaux of the Gretna Police Department testified at trial that on May 27, 2013, he arrested defendant for having an open alcoholic container in public. Defendant initially identified himself to Officer Thibodeaux as “Ariel Silva;” however, upon being processed into the Jefferson Parish Correctional Center (“JPCC”), he identified himself as “Daniel Lobo.” Defendant was thereafter released. Subsequently, on June 7, 2013, JPCC notified Officer Thibodeaux that defendant’s fingerprints revealed defendant’s identity as Denis Flores. At that time, Officer Thibodeaux issued an arrest warrant for defendant in his proper name. On June 24, 2013, Officer Thibodeaux again came into contact with defendant when he again observed defendant with an open alcoholic container in public. This time, defendant identified himself to Officer Thibodeaux as “Daniel Lobo.” Officer Thibodeaux recognized defendant as Denis Flores, confirmed that his arrest warrant was still valid, and placed defendant under arrest on the open warrant, as well as public intoxication and resisting arrest by failing to identify himself. Officer Thibodeaux further testified that at all times during all interactions with defendant, defendant understood the English language and | ¿responded in the English language. At no time did Officer Thibodeaux feel that he needed to request the assistance of a Spanish-speaking officer.
Deputy Christopher Ohlmeyer of the Jefferson Parish Sheriff’s Office testified that he was working at JPCC on May 27, 2013. Deputy Ohlmeyer testified that on that date, he processed defendant as “Ariel Silva.” Upon doing so, Deputy Ohlmeyer became aware that “Ariel Silva” was a sex offender. Accordingly, Deputy Ohlmeyer filled out an Acknowledgement of Registration for Sex Offenders with defendant, further explaining to defendant that he had three days to register as a sex offender. Deputy Ohlmeyer testified that defendant signed the form as “Ariel Silva” and was given a copy of the form upon his release. Deputy Ohlmeyer additionally testified that defendant conversed with him in English.
Lieutenant Luis Munguia of the Jefferson Parish Sheriffs Office testified that as Commander of the Fingerprint Identification Division, he is in charge of the sex offender registry for Jefferson Parish. Lieutenant Munguia testified that in May 2009, defendant was sent to the office of Probation and Parole to begin his sex offender registration as a result of his conviction of indecent behavior with a juvenile. Lieutenant Munguia identified the Sex Offender Contract that he personally completed with defendant. The contract informed defendant of the necessary steps that must be taken to complete and maintain his registration as a sex offender. Defendant placed his initials, “D.F.,” next to all of the enumerated items informing him of his requirements and defendant signed the form. Lieutenant Munguia confirmed ^tjhat since defendant’s initial registration date of May 13, 2009, defendant did nothing to complete or maintain his registration. Lieutenant Munguia further testified that defendant spoke “perfectly good English” |fiand that if defendant had not been able to communicate in English, he would have communicated with defendant in Spanish.
Last, Deputy Nikki Passalaqua of the Jefferson Parish Sheriff’s Office crime lab testified as an expert in fingerprint analysis and comparison. The fingerprints contained in defendant’s certified conviction packet for his conviction of indecent behavior with a juvenile were not of good quality so she looked to his arrest card in that conviction. Ms. Passalaqua examined the *806 fingerprints on the arrest card and determined that they matched the fingerprints she took from defendant in court pn the day prior.
Defendant did not call any witnesses at trial.

Discussion

Sufficiency of the Evidence

In his first assignment of error, defendant argues that the State failed to establish the elements of the offense of failure to register as a sex offender. Therefore, defendant asserts that the trial court erred in denying defendant’s motions for post-verdict judgment of acquittal and new trial. Conversely, the State argues that the evidence at trial was sufficient to support the conviction.
The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to Jackson, the standard is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential- elements of the crime beyond a reasonable'doubt. Id. Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. State v. Flores, 10-651 (La.App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122. Rather, the reviewing court |fimust decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Id.; Jackson, 443 U.S. at 319, 99 S.Ct. at 2781; See also State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Holmes, 98-490 (La.App. 5 Cir. 3/10/99), 735 So.2d 687.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
Defendant was convicted of failure to register as a sex offender in violation of La. R.S. 15:542. In order to support a conviction of La. R.S.. 15:542, the State must prove that defendant was convicted of a sex offense as defined in La. R.S. 15:541, that he resided in Louisiana for the period during which he was required to register, and that he failed to register within the requisite time allotted for registration. La. R.S. 15:542; State v. Watts, 09-0912 (La.App. 4 Cir. 6/16/10), 41 So.3d 625, 641, writ denied, 10-1685 (La.1/28/11), 56 So.3d 966. In this case, defendant does not contest his prior conviction of indecent behavior with a juvenile, for which he was required to register as a sex offender, nor does he 17contest that he resided in Louisiana or that he failed to register as required by La. R.S. 15:542. Instead, defendant argues that the State failed to prove that defendant was advised to register as a sex offender during the time frame charged in the bill of information.
*807 The evidence at trial established that defendant was advised of his registration requirements as a sex offender both in May 2009 and May 2013 via the Notification to Sex Offender form executed upon conviction of indecent behavior with a juvenile before the trial court as well as the Sex Offender Contract and the Acknowl-edgement of Registration for Sex Offenders executed by defendant, all establishing that defendant was properly notified and advised of his registration requirements and the necessary steps to complete his registration. While defendant argues that the State failed to prove that defendant, and not “Ariel Silva,” executed the Ac-knowledgement of Registration for Sex Offenders on May 27, 2013, we are unpersuaded. Lieutenant Munguia established through his trial testimony that defendant and “Ariel Silva” are one and the same individual as determined through fingerprint identification and state identification numbers. Further, Lieutenant Munguia testified that defendant never completed the registration requirements beyond signing the Sex Offender Contract in May 2009. Therefore, at no time was defendant compliant with La. R.S. 15:542.
Defendant additionally asserts that in order to sustain a conviction under La. R.S. 15:542, the State must prove that: 1) a defendant must understand what is required of him in order to register; and 2) a defendant must have the financial ability to comply with the cost of registration. Defendant’s appreciation of La. R.S. 15:542 is misplaced. Neither asserted requirement is an “element” of the charged offense. Nonetheless, the record contains no evidence that defendant did not understand the sex offender registration requirements at the time they were | ^explained to him initially by Lieutenant Munguia in May 2009 or by Deputy Ohl-meyer in May 2013. To the contrary, Lieutenant Munguia testified that during his review of the Sex Offender Contract with defendant, no interpreter was present and defendant “spoke perfectly good English.” Similarly, in reviewing the Ac-knowledgement of the Registration for Sex Offenders with defendant upon his arrest on May 27, 2013, Deputy Ohlmeyer testified that defendant communicated with him “sufficiently in English,” acknowledging what Deputy Ohlmeyer was communicating to him.
Defendant’s second argument, which suggests that it is illegal “to convict someone of a felony offense and incarcerate them for a violation of the sex offender registration requirements when they simply can’t pay the costs of the registration,” similarly is without merit. The Louisiana Supreme Court addressed the issue of costs associated with sex offender registration in State ex rel. Olivieri v. State, 00-0172 (La.2/21/01), 779 So.2d 735, cert. denied, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001). In Olivieri, the defendants asserted that the sex offender registration requirement violated ex post facto prohibitions of the federal and state constitutions and that the cost of compliance with the requirement was unduly burdensome. While acknowledging that such costs could be “weighty,” the Court also recognized that such expenses are a “necessary part of the regulatory scheme,” and “that the economically harsh results of [the] well justified system of public notification is not the result of governmental action, but as a consequence of the sex offenders’ crimes.” Id. at 749.
Considering the foregoing, we find that the evidence is sufficient to support defendant’s conviction of failure to register as a sex offender. As such, we find the trial court properly denied defendant’s motions for post-verdict judgment of acquittal and new trial.
*808 | ⅝Defense Objections
In his second assignment of error, defendant asserts that the trial court erred in failing to sustain defense objections to statements made during the State’s rebuttal argument to the jury. Specifically, defendant argues that the State’s remark relative to defendant’s claim that he could not understand English was “inappropriate and undesirable” and further “undermined” him in front of the jury.
The prosecutor made the following comment during rebuttal closing argument: THE STATE:
There’s been a big issue made about [defendant’s] ability to understand English. Every single law enforcement officer that testified said they had absolutely no problem talking to him. This is a smokescreen.
Defense counsel objected, and the trial court overruled the objection. Twice more during closing arguments, the State made similar references to defendant’s claimed inability to understand English as a “smoke screen.” Defense counsel did not object further.
Pursuant to La.C.Cr.P. art. 774, argument at trial shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. Closing arguments shall not appeal to prejudice. Id. The State’s rebuttal argument shall be confined to answering the argument of the defendant. Id.
While the trial judge has broad discretion in controlling the scope of closing arguments, prosecutors enjoy wide latitude in choosing closing argument tactics. State v. Brumfield, 96-2667 (La.10/20/98), 737 So.2d 660, 666, cert denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999). However, the prosecutor should refrain from making personal attacks on defense strategy and counsel. Id. (citing State v. Duplessis, 457 So.2d 604, 609 (La.1984)). Nevertheless, even |inwhere a prosecutor exceeds his wide latitude, the reviewing court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the guilty verdict. State v. Taylor, 07-93 (La.App. 5 Cir. 11/27/07), 973 So.2d 83, 103, writ denied, 07-2454 (La.5/9/08), 980 So.2d 688. In making its determination, the appellate court should give credit to the good sense and fair-mindedness of the jury that has seen the evidence and heard the argument, and has been instructed that the arguments of counsel are not evidence. Id.
In State v. Martin, 539 So.2d 1235, 1240 (La.1989), the Louisiana Supreme Court held that references to a “smoke screen” by a prosecutor during closing argument, while undesirable, did not rise to the level of prejudice necessary to constitute reversible error. See also State v. Jackson, 12-90 (La.App. 4 Cir. 4/24/13), 115 So.3d 1155, 1166, writ denied, 13-1235 (La.12/2/13), 126 So.3d 497, cert. denied, — U.S. -, 134 S.Ct. 1950, 188 L.Ed.2d 962 (trial court did not err in overruling the defendant’s objection during State’s rebuttal argument where prosecutor compared the defense to Muhammad Ali, a “master of distraction” who would use fancy footwork and talking during fights to distract his opponents); State v. McNeil, 613 So.2d 752, 757 (La.App. 4th Cir.1993), writ denied, 623 So.2d 1320 (La.1993) (trial court properly overruled defense objection during State’s rebuttal closing argument that the defense was trying to create a smoke screen by introducing evidence of confusing facts as the statement was nothing but the State’s opinion of the evidence, and was a legitimate comment on the evidence); State v. Bretz, 394 So.2d 245, 249 (La.1981), cert. *809 denied, 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981) (State’s rebuttal closing argument that defense attorney did “what every defense attorney does when he does not have a case and they can’t justify what their client has done” was similar to arguing that the defense resorted to a smoke screen, was allowed and did not prejudice the defendant).
In Here, defense counsel during closing argument argued to the jury that defendant could not have completed his registration as a sex offender because he could not afford to and because he did not understand the registration process as Spanish is his native language. The State in rebuttal argued that defendant understood English and the requirements placed upon him and defendant’s claim that he did not understand English was a smoke screen. Upon review of the record, we find that the prosecutor’s remark was the State’s opinion of the evidence and in direct rebuttal to defense counsel’s argument. Moreover, the trial court minimally twice instructed the jury that argument is not evidence. Under the facts and evidence presented in this case, we do not find that the prosecutor’s remark influenced the jury or contributed to the guilty verdict. Accordingly, we do not find that the trial court abused its broad discretion in controlling the scope of closing arguments.

Constitutionality of La.C,Cr.P. art. 782

In his third assignment of error, defendant contends that the trial court erred as a matter of law in failing to find La.C.Cr.P. art. 782(A), which provides for non-unanimous jury verdicts, unconstitutional and affirming an 11 to one jury verdict.
Both the Louisiana Constitution of 1974 and the Louisiana Code of Criminal Procedure provide that criminal cases in which the punishment is necessarily confinement at hard labor shall be tried before a jury of 12 persons, ten of whom must concur to render a verdict. La. Const. Art. I, § 17(A); La.C.Cr.P. art. 782(A). Pursuant to La. R.S. 15:542.1.4, a defendant, upon first conviction, shall be imprisoned with hard labor. Accordingly, defendant was tried before a 12-person jury and convicted by a jury verdict of 11 to one.
| ^Defendant’s assertion that La.C.Cr.P. art. 782(A) is unconstitutional is foreclosed by the decisions previously rendered by the United States and Louisiana supreme courts. In Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court held that a state court conviction of a crime by less than a unanimous jury does not violate the right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment.
Likewise, the Louisiana Supreme Court has consistently held that non-unanimous jury verdicts for 12-person juries are not unconstitutional in non-capital cases. See State v. Edwards, 420 So.2d 663, 674 (La.1982). In State v. Bertrand, 08-2215, 08-2311 (La.3/17/09), 6 So.3d 738, 743, the Louisiana Supreme Court specifically reversed a district court ruling which found La.C.Cr.P. art. 782 unconstitutional. In reaffirming well-established jurisprudence that a non-unanimous jury verdict is constitutional and does not violate the Fifth, Sixth, or Fourteenth Amendments, the Court stated as follows:
Due to this Court’s prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court’s still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial *810 court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments. With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of superior courts.
Id. at 743.
Further, in accordance with Bertrand, supra, this Court has consistently upheld the constitutionality of Louisiana law which allows for non-unanimous jury verdicts in non-capital cases. See State v. Napoleon, 12-749 (La.App. 5 Cir. 5/16/13), 119 So.3d 238, 246; State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, 614, writ denied, 12-2478 (La.4/19/13), 111 So.3d 1030; State v. Wade, 10-997 (La.App. 5 Cir. 8/30/11), 77 So.3d 275, 281-282, writ denied, 13-422 (La.7/31/13), 118 So.3d 1116; State v. Carter, 10-973 (La.App. 5 Cir. 8/30/11), 75 So.3d 1, 5-6, writ denied, 11-2060 (La.2/10/12), 80 So.3d 469; State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 591-592, writ denied, 11-1753 (La.2/10/12), 80 So.3d 468, cert. denied, — U.S. -, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012); State v. Smith, 09-100 (La.App. 5 Cir. 8/25/09), 20 So.3d 501, 505-508, writ denied, 09-2102 (La.4/5/10), 31 So.3d 357.
Accordingly, this claim lacks merit.

Multiple Offender Adjudication

In his fourth assignment of error, defendant contends that the trial court erred in adjudicating him a third felony offender because the State’s evidence of his predicate convictions was insufficient. Specifically, defendant argues that the State failed to introduce the Boykin[1] transcripts of the two predicate guilty pleas and failed to show that he, a Spanish-speaking person, understood his waiver of rights. The State responds that it introduced sufficient evidence upon which the trial court could adjudicate defendant a third felony offender and that defendant produced no evidence to demonstrate an infringement of his rights. •
In State v. Shelton, 621 So.2d 769 (La.1993), the Louisiana Supreme Court addressed the burden of proving prior guilty pleas in a multiple offender proceeding:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of 114the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State- to determine whether the State has met its burden of proving that defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boy-kin rights.
Id. at 779-780.
Once the State establishes a prior felony conviction, then it must offer *811 proof that the accused is the same person who was convicted of the prior felony. State v. Curtis, 338 So.2d 662, 664 (La.1976). The State is not required to use a specific type of evidence. Any competent evidence may be used. Id. Merely establishing that the defendant’s name is the same name of the person previously convicted is insufficient to prove identity. The defendant’s identity may be shown by a variety of methods, including the testimony of witnesses, fingerprint analysis by an expert, photographs contained in a duly authenticated record, or evidence of identical driver’s license number, sex, race, and date of birth. Id.
At the multiple offender hearing, the State introduced as State’s Exhibit Two the certified conviction packet of defendant’s previous guilty plea entered on November 15, 2010, in the 24th Judicial District Court, case number 10-3609, for the offense of unauthorized entry of an inhabited dwelling committed on or about May 20, 2010. That conviction packet contains copies of the bill of information, the July 30, 2010 minute entry reflecting defendant’s arraignment, and the November 15, 2010 minute entry indicating that defendant pleaded guilty after the trial judge advised him of his right to trial by judge/ jury, right to confront his accusers, and right against self-incrimination. The packet also contains Defendant’s Acknowledgment of Constitutional Rights and Waiver of Rights on |1fiEntry of a Plea of Guilty, which reflects that defendant was represented by counsel. Defense counsel signed the form certifying that he informed defendant of his rights and was satisfied that defendant understood the consequences of his plea of guilty.
The State additionally introduced as State’s Exhibit Four the certified conviction packet of defendant’s prior guilty plea also entered on November 15, 2010, in the 24th Judicial District Court, case number 10-2805, for the offense of failure to maintain sex offender registration. That packet contains the bill of information and the November 15, 2010 minute entry indicating that defendant pleaded guilty after the trial judge advised him of his three Boykin rights. The packet also contains Defendant’s Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty, which reflects that defendant was represented by defense counsel. Defense counsel additionally signed the form as he did in State’s Exhibit Two.
Nikki Passalaqua, the expert in fingerprint analysis and comparison, identified State’s Exhibit One as defendant’s fingerprints taken by her earlier that day. Deputy Passalaqua testified that defendant’s fingerprints taken that day and the fingerprints on both arrest registers for defendant’s prior offenses of unauthorized entry of an inhabited dwelling and failure to maintain sex offender registration matched. She determined that defendant was the same individual arrested in the predicate offenses.
Defendant also testified at the hearing with the assistance of a Spanish-speaking interpreter. He admitted that he pleaded guilty on November 15, 2010, to unauthorized entry of an inhabited dwelling and failure to maintain sex offender registration; however, he claimed he did not understand the consequences of pleading guilty to those offenses because the waiver forms that he signed were in English.
| ¶(¡Based upon the above testimony and evidence, we find that the State satisfied its initial burden of proving the existence of the prior convictions and that defendant was represented by counsel. Accordingly, the burden shifted to defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of either of the *812 pleas in order to shift the burden back to the State to produce evidence that defendant specifically waived his rights to a trial by jury, the privilege against self-incrimination and the right to confrontation. Shelton, at 779-80.
We find defendant’s self-serving testimony, that he did not understand the consequences of his pleas of guilty because the waiver of rights forms were in English, insufficient to shift the burden back to the State. Defendant admitted that he pleaded guilty to both predicate convictions. Further, the minute entries relative to both predicate guilty pleas indicate that an interpreter was present and sworn in during the Boykin colloquy with the trial judge. Moreover, the trial court heard the trial testimony of Officer Thibodeaux, Deputy Ohlmeyer, and Lieutenant Munguia that defendant sufficiently communicated with them in the English language.
Based on the foregoing, we find the evidence sufficient to establish defendant’s adjudication as a third felony offender.

Excessive Sentence

In his final assignment of error, defendant asserts that the trial court imposed an unconstitutionally excessive sentence. The State contends that defendant’s sentence was within the statutory range and that courts have imposed even greater sentences for similar offenses.
Upon adjudicating defendant a third felony offender, the trial court vacated defendant’s original sentence and resentenced him pursuant to La. R.S. 15:529.1 to | ^imprisonment at hard labor for a term of eight years without benefit of parole, probation, or suspension of sentence.
While defendant did object to his adjudication as a third felony offender, he did not file a motion to reconsider sentence. La. C.Cr.P. article 881.1(E) provides that the “[fjailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the State or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.” “The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, merely limits a defendant to a bare review of the sentence for constitutional excessiveness.” State v. Adair, 04-120 (La.App. 5 Cir. 5/26/04), 875 So.2d 972, 974.
“A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering.” State v. Lobato, 603 So.2d 739, 751 (La.1992). The three factors considered in reviewing a trial court’s sentencing discretion are the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes by the same court and other courts. State v. Richmond, 97-1225 (La.App. 5 Cir. 3/25/98), 708 So.2d 1272, 1275 (citing State v. Telsee, 425 So.2d 1251 (La.1983)). “The trial judge has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion.” State v. Thompson, 02-333 (La.4/9/03), 842 So.2d 330, 338.
Under the penalty provision for failure to register as a sex offender, upon first conviction, defendant faced a sentencing range of imprisonment at hard labor for a term of not less than two years nor more than ten years without benefit of | ^parole, probation, or suspension of sentence. La. R.S. 15:542.1.4(1). Under La. *813 R.S. 15:529.1(3)(a), as a third felony offender, defendant faced a sentencing range of “not less than two-thirds of the longest possible sentence ... and not more than twice the longest possible sentence prescribed for a first conviction.” Id. Therefore, defendant faced a minimum sentence of approximately six years and eight months to a maximum sentence of 20 years. The trial court imposed an enhanced sentence of only eight years, which is well within the statutory limits imposed by the legislature. Further, Louisiana courts have upheld as constitutional originally imposed sentences similar to defendant’s enhanced sentence.
In State v. Washington, 44,864 (La.App. 2 Cir. 12/9/09), 26 So.3d 922, the court of appeal determined that the defendant’s eight-year sentence at hard labor without benefit of parole, probation, or suspension of sentence for failing to register as a sex offender was not excessive. In Washington, the defendant had an extensive criminal history and failed to register as a sex offender for approximately eight years. The court found that the sentence was neither grossly disproportionate to the severity of the offense, nor was it shocking to the sense of justice, finding that the trial court did not abuse its discretion. Id.
In State v. Mueller, 10-0710 (La.App. 4 Cir. 12/8/10), 53 So.3d 677, the court of appeal found that the maximum ten-year sentence imposed upon the defendant for conviction of failure to register as a sex offender was not excessive. In Mueller, the court considered that the defendant had prior felony convictions that included two sex crimes, showed defiance in complying with his conditions of probation, and had a general recidivist history. The court found that the ten-year sentence was supported by the record.
Similarly, in this case, we find defendant’s imposed sentence is not constitutionally excessive. The imposed sentence of eight years is within |1flthe statutory range and the record reflects that defendant has prior felony convictions, including indecent behavior with a juvenile, unauthorized entry of an inhabited dwelling and a separate conviction for failure to register as a sex offender. Accordingly, we find that the trial court did not abuse its broad sentencing discretion as the imposed sentence is neither grossly disproportionate to the severity of the offense, nor shocking to the sense of justice.

Errors Patent

The record was reviewed for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Upon review of the record, we find no errors patent requiring corrective action.

Decree

Considering the foregoing, we affirm defendant’s conviction and sentence for violation of La. R.S. 15:542.

AFFIRMED.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).