# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-653

STATE OF LOUISIANA

VERSUS

JOSHUA JEROME BALL

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 14-931
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Jimmie C. Peters, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**CONVICTIONS AFFIRMED;**

**SENTENCES FOR VIOLATIONS OF LA.R.S. 15:542.1 AND LA.R.S. 15:542.1.2 ARE AFFIRMED;**

**SENTENCE FOR VIOLATION OF LA.R.S. 15:542 IS VACATED; REMANDED FOR RESENTENCING.**

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Joshua Jerome Ball**

**Honorable James P. Lemoine**
**District Attorney, Thirty-Fifth Judicial District Court**
**Rhea Renee Nugent**
**Assistant District Attorney**
**P. O. Box 309**
**Colfax, LA 71417-0309**
**(318) 627-3205**
**COUNSEL FOR APPELLEE:**
  **State of Louisiana**

**GREMILLION, Judge.**

Defendant, Joshua Jerome Ball, was convicted of carnal knowledge of a juvenile in Pointe Coupee Parish in 2005, and, as a result, was required to comply with the sex offender registration and notification requirements set forth in La.R.S. 15:540, *et seq.*

Defendant was charged by bill of information with failure to register as a sex offender, a violation of La.R.S. 15:542; failure to notify law enforcement of a change of address, a violation of La.R.S. 15:542.1.2; and failure to provide notification as a sex offender, a violation of La.R.S. 15:542.1. Defendant entered a plea of not guilty. Following a jury trial, Defendant was found guilty as charged. Thereafter, Defendant filed a "Motion for a New Trial" and "Memorandum in Support of Motion for a Post Verdict Judgment of Acquittal or (in the Alternative) a New Trial," which were denied by the trial court.

Defendant was sentenced on May 12, 2016, to serve three and one-half years at hard labor, with the first two years to be served without benefit of probation, parole, or suspension of sentence, on each count, to run concurrently. Defendant was also ordered to pay a fine of five hundred dollars, court costs, and seven hundred fifty dollars to the Public Defender's Office.

Defendant timely appealed and asserts the following three assignments of error: 1) he received ineffective assistance of counsel when counsel failed to seek quashal of the bill of information and failed to object to erroneous jury instructions; 2) the trial court erred in questioning witnesses during the trial, in the presence of the jury, without his consent; and 3) the evidence introduced at the trial was insufficient to prove, beyond a reasonable doubt, all of the elements of the charged offenses. For the following reasons, Defendant's convictions are affirmed. His sentences for failure to notify law enforcement of a change of address and

failure to provide notification as a sex offender are affirmed. However, his sentence for failure to register as a sex offender is vacated, and the matter is remanded for resentencing.

**ASSIGNMENT OF ERROR NUMBER THREE**

In his third assignment of error, Defendant contends that the evidence introduced at the trial of this case, when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), standard, was insufficient to prove, beyond a reasonable doubt, all of the elements of the charged offenses. When the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, we first determine the sufficiency of the evidence. *State v. Hearold*, 603 So.2d 731 (La.1992). The rationale is that when the entirety of the evidence is insufficient to support the defendant's conviction, the defendant must be discharged as to that crime, and any issues regarding trial errors become moot. *Id.* Accordingly, we will first address Defendant's third assignment of error.

> In reviewing the sufficiency of the evidence to support a conviction, this Court has recognized that an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, [443 U.S. 307, 99 S.Ct. 2781 (1979)]. *State v. Tate*, 01-1658 (La.5/20/03), 851 So.2d 921, 928 (citing *State v. Captville*, 448 So.2d 676, 678 (La.1984)). Under this standard, an appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *Tate*, 851 So.2d at 928.

> . . . .

> This Court has held that the trier of fact may make reasonable inferences from the evidence presented. In *State v. Spears*, we stated:

>> When evaluating circumstantial evidence, the trier of fact must consider the circumstantial evidence in light of the direct evidence, and vice versa, [and] the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to

2

each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.

05-0964 (La.4/4/06), 929 So.2d 1219, 1222 (citing *State v. Chism*, 436 So.2d 464, 469 (La.1983)). In *Chism,* we further held that "[t]he gist of circumstantial evidence, and the key to it, is the inference, or process of reasoning by which the conclusion is reached. This must be based on the evidence given, together with a sufficient background of human experience to justify the conclusion." 436 So.2d at 469.

*State v. Bryant*, 12-233, pp. 4-7 (La. 10/16/12), 101 So.3d 429, 432-33, *writ denied*, 12-229 (La. 1/25/13), 105 So.3d 61.

The bill of information states that "on or about March 13, 2014," Defendant did commit the following offenses in Grant Parish:

COUNT I: committed the offense of FAILURE TO REGISTER AS A SEX OFFENDER in violation of R.S. 15:542 in that he was an adult living in this state who has pled guilty to, or been convicted of a sex offense and did fail to register with the sheriff of the parish of his residence, and with the chief of police as required by R.S. 15:542.

COUNT II: committed the offense of FAILURE TO NOTIFY LAW ENFORCEMENT OF CHANGE OF ADDRESS in violation of La. R. S. 15:542.1.2 in that he failed to appear at the Sheriff's Office to update his information as required by law.

COUNT III: committed the offense of FAILURE TO PROVIDE NOTIFICATION AS A SEX OFFENDER in violation of La. R. S. 15:542.1 in that he failed to give notice for the crime he was previously convicted.

On the date of the offenses, as set forth in the bill of information, La.R.S. 15:542.1.4 provided, in pertinent part:

A. (1) A person who fails to register, periodically renew and update registration, provide proof of residence or notification of change of address or other registration information, or provide community notification as required by the provisions of this Chapter, and a person who knowingly provides false information to a law enforcement agency as provided in R.S. 15:542(C)(3), shall, upon first conviction, be fined not more than one thousand dollars and imprisoned with hard labor for not less than two years nor more than

3

ten years without benefit of parole, probation, or suspension of sentence.

. . . .

(3) An offender who fails to pay the annual registration fee in accordance with the provisions of R.S. 15:542 shall be fined not more than five hundred dollars, imprisoned for not more than six months, or both. Upon a second or subsequent conviction for the failure to pay the annual registration fee, the offender shall be punished in accordance with the provisions of Paragraphs (1) and (2) of this Subsection.

Sex offender registration requirements are set forth, in pertinent part, in

La.R.S. 15:542, which provided as follows on March 13, 2014:

B. (1) The persons listed in Subsection A of this Section shall register in person with the sheriff of the parish of the person's residence, or residences, if there is more than one, and with the chief of police if the address of any of the person's residences is located in an incorporated area which has a police department. If the offender resides in a municipality with a population in excess of three hundred thousand persons, he shall register in person with the police department of his municipality of residence.

(2) The offender shall also register in person with the sheriff of the parish or parishes where the offender is an employee and with the sheriff of the parish or parishes where the offender attends school. If the offender is employed or attends school in a municipality with a population in excess of three hundred thousand persons, then he shall register only, pursuant to this Paragraph, with the police department of the municipality where he is employed or attends school. The offender shall also register in the parish of conviction for the initial registration only. No registration in the parish of conviction is necessary if the offender is incarcerated at the time of conviction or immediately taken into custody by law enforcement after the conviction.

. . . .

C. (1) The offender shall register and provide all of the following information to the appropriate law enforcement agencies listed in Subsection B of this Section in accordance with the time periods provided for in this Subsection:

(a) Name and any aliases used by the offender.

(b) Physical address or addresses of residence.

(c) Name and physical address of place of employment. If the offender does not have a fixed place of employment, the offender shall provide information with as much specificity as possible

regarding the places where he works, including but not limited to travel routes used by the offender.

. . . .

(e) Two forms of proof of residence for each residential address provided, including but not limited to a driver's license, bill for utility service, and bill for telephone service. If those forms of proof of residence are not available, the offender may provide an affidavit of an adult resident living at the same address. The affidavit shall certify that the affiant understands his obligation to provide written notice pursuant to R.S. 15:542.1.4 to the appropriate law enforcement agency with whom the offender last registered when the offender no longer resides at the residence provided in the affidavit.

(f) The crime for which he was convicted and the date and place of such conviction, and if known by the offender, the court in which the conviction was obtained, the docket number of the case, the specific statute under which he was convicted, and the sentence imposed.

(g) A current photograph.

(h) Fingerprints, palm prints, and a DNA sample.

(i) Telephone numbers, including fixed location phone and mobile phone numbers assigned to the offender or associated with any residence address of the offender.

(j) A description of every motorized vehicle registered to or operated by the offender, including license plate number and vehicle identification number, and a copy of the offender's driver's license and identification card. This information shall be provided prior to the offender's operation of the vehicle.

(k) Social security number and date of birth.

(l) A description of the physical characteristics of the offender, including but not limited to sex, race, hair color, eye color, height, age, weight, scars, tattoos, or other identifying marks on the body of the offender.

(m) Every e-mail address, online screen name, or other online identifiers used by the offender to communicate on the Internet. Required notice must be given before any online identifier is used to communicate on the Internet.

(n)(i) Temporary lodging information regarding any place where the offender plans to stay for seven or more days. This information shall be provided at least three days prior to the date of departure unless an emergency situation has prevented the timely disclosure of the information.

. . . .

(2) Unless an earlier time period is specified in the provisions of Paragraph (1) of this Subsection, every offender required to register in accordance with this Section shall appear in person and provide the information required by Paragraph (1) of this Subsection to the appropriate law enforcement agencies within three business days of establishing residence in Louisiana. If the offender is a current resident of Louisiana and is not immediately taken into custody or incarcerated after conviction or adjudication, he shall provide the information on the date of conviction to the sheriffs of the parish where the offender was convicted or adjudicated and shall, within three business days after conviction or adjudication, provide the information to the sheriff of the parishes of the offender's residence, employment, and school. If incarcerated immediately after conviction or placed in a secure facility immediately after adjudication, the information required by Paragraph (1) of this Subsection shall be provided to the secretary of the Department of Public Safety and Corrections, or his designee, or the deputy secretary for youth services, or his designee, whichever has custody of the offender, within ten days prior to release from confinement. Once released from confinement, every offender shall appear in person within three business days to register with the appropriate law enforcement agencies pursuant to the provision of this Section. The offender shall register with the sheriff of the parish in which the residence address he initially supplied to the Department of Public Safety and Corrections is located, unless his residence address has changed and he has registered with the sheriff of the parish in which his new residence address is located.

. . . .

D. The offender shall pay to the appropriate law enforcement agencies with whom he is required to register, except for the campus law enforcement agency of an institution of postsecondary education, an annual registration fee of sixty dollars to defray the costs of maintaining the record of the offender. The payment of such a fee shall be made in accordance with any rule regarding indigency adopted by the judges of the judicial district court in the jurisdiction or as determined by criteria established by the Department of Public Safety and Corrections. The offender shall pay such fee upon the initial registration and on the anniversary thereof. Failure by the offender to pay the fee within thirty days of initial registration shall constitute a failure to register and shall subject the offender to prosecution under the provisions of R.S. 15:542.1.4(A)(3). The offender shall not be prevented from registering in accordance with this Section for failure to pay the annual registration fee.

Residence was defined in La.R.S. 15:541(22) as "a dwelling where an offender regularly resides, regardless of the number of days or nights spent there."

Louisiana Revised Statutes 15:542.1.2 sets forth the offender's duty to notify law enforcement of a change of address, residence, or other registration information, in pertinent part:

A. Unless an earlier time period is otherwise specified in the provisions of this Chapter, those persons required to register pursuant to the provisions of this Chapter shall appear in person at the sheriff's office in the parish of residence, or the police department in the case of a municipality with a population in excess of three hundred thousand, where the offender is currently registered to update information within three business days of establishing a new or additional physical residential address or of changes in information previously provided when any of the following occur:

(1) The offender changes his place of residence or establishes a new or additional residence.

(2) The offender has vacated his current address of registration with the intent not to return.

(3) The offender has been absent from his current address of registration for more than thirty consecutive days or an aggregate of thirty days or more per calendar year and is physically present at another address during that same time period.

(4) The offender has a change in name, place of employment, or any information previously provided pursuant to R.S. 15:542(C).

B. If the new or additional residence is located in a different parish than where the offender was previously registered, then he shall appear in person with the sheriff of the parish of the new or additional residence to register within the same time period established in Subsection A.

C. (1) Any person required to register in accordance with the provisions of this Chapter shall also be required to send a written notice of change of address or other information to the law enforcement agency with whom he was previously registered within three business days of establishing a new or additional residence.

(2) Upon receipt of a notice of change of address or updated information, the sheriff shall forward such information immediately to each law enforcement agency with which the offender is required to register pursuant to R.S. 15:542(A) and to the bureau.

D. The notice of change of address required by this Section shall include proof of residence as required by R.S. 15:542(C).

E. (1) Any person who is required to appear in person to give notice of a new address in accordance with the provisions of Subsection A of this Section shall also be required to provide new notification based upon the new address as provided for in R.S. 15:542.1, as applicable.

(2) Any sex offender who fails to provide change of address or other information as provided in this Section shall be subject to criminal prosecution as provided in R.S. 15:542.1.4.

F. (1) The offender shall appear in person at the sheriff's office in the parish of residence at least three days prior to establishing temporary lodging to provide temporary lodging information regarding any place where the offender plans to stay for seven consecutive days or more.

(2) If the location of the temporary lodging is outside of the boundaries of the parish of registration, then the sheriff shall notify the sheriff of the parish of temporary lodging. If the location of the temporary lodging is out of state, then the sheriff shall notify the bureau.

Notification requirements for sex offenders are set out in La.R.S. 15:542.1:

A. Any adult residing in this state who has pled guilty to, has been convicted of, or where adjudication has been deferred or withheld for the perpetration or attempted perpetration of, or conspiracy to commit, a sex offense as defined in R.S. 15:541 or a criminal offense against a minor as defined in R.S. 15:541 shall be required to provide the following notifications:

(1) Give notice of the crime for which he was convicted, his name, residential address, a description of his physical characteristics as provided in R.S. 15:542(C)(1), and a photograph or copy thereof to all of the following:

. . . .

(2)(a) Give notice of the crime for which he was convicted, his name, jurisdiction of conviction, a description of his physical characteristics as required by this Section, and his physical address by mail to all people residing within the designated area within twenty-one days of the date of conviction, if the offender is not taken into custody at the time of conviction, or within twenty-one days of the date of release from confinement or within twenty-one days of establishing residency in the locale where the offender plans to have his domicile, and the notice shall be published on two separate days within the applicable period provided for herein, without cost to the state, in the official journal of the governing authority of the parish where the defendant plans to reside and, if ordered by the sheriff or police department or required by local ordinance, in a newspaper

8

which meets the requirements of R.S. 43:140(3) for qualification as an official journal and which has a larger or smaller circulation in the parish than the official journal. The notice provided to the official journal or other designated newspaper pursuant to this Subparagraph shall also include a recent photograph of the offender or a clear photocopy of a recent photograph of the offender.

(b) Those persons required to provide community notification pursuant to the provisions of this Section shall provide such community notification every five years from the date of the previous notification.

In order to support a conviction under La. R.S. 15:542, "the State must prove that defendant was convicted of a sex offense as defined in La. R.S. 15:541, that he resided in Louisiana for the period during which he was required to register, and that he failed to register within the requisite time allotted for registration." *State v. Flores*, 14-642, p. 6 (La.App. 5 Cir. 12/23/14), 167 So.3d 801, 806. One of the requirements of La.R.S. 15:542.1.2 "is that whenever a sex offender changes his place of residence or vacates his current address of registration with the intent not to return, he must notify the local law enforcement agency of his new address within three [business] days" of establishing a new or different physical residential address. *State v. Cavazos*, 11-733, p. 10 (La.App. 4 Cir. 5/16/12), 94 So.3d 870, 879, *writs denied*, 12-1372, 12-1438 (La. 10/26/12), 99 So.3d 645. Louisiana Revised Statutes 15:542.1 requires an offender to give notice by mail and publication in the official journal of the governing body of various information within twenty-one days of establishing residency in the locale where the offender plans to have his domicile.

*Testimony*

The parties stipulated that Defendant was convicted of carnal knowledge of a juvenile on January 24, 2005, in Pointe Coupee Parish.

9

*Detective Lara Morman-Pointe Coupee Parish*

Detective Lara Morman testified that she was employed by the Pointe Coupee Parish Sheriff's Office. Part of her duties included handling sex offender registration. She indicated that a conviction of carnal knowledge of a juvenile required registration once a year for fifteen years, which began when Defendant was released from incarceration. Detective Morman testified that Defendant had three days upon entering the parish to "come in and once they establish residence to sign their registration."

At the time of trial, February 2016, Defendant was registered in Pointe Coupee Parish and had last reported on August 1, 2014, to sign his sex offender contract. The address he listed as his residence at that time was 461 Lamb Road, Morganza, Louisiana, which is in Pointe Coupee Parish.

Detective Morman testified Defendant registered in Pointe Coupee Parish in 2010, 2011, and 2012. In 2012, Defendant left Pointe Coupee Parish to go to Colfax, Louisiana, in Grant Parish. Detective Morman said that Defendant advised Lieutenant Torres that he had obtained employment and was moving.[1] Defendant signed the 2012 contract on March 13, 2012. At that time, Defendant listed his address as 7458 Williams Lane, Lot 4, Morganza. Defendant did not return to the Pointe Coupee Parish agency on March 13, 2013. When asked why she thought Defendant was living in Colfax, Detective Morman stated, "he had already been imported from my files by Colfax." Detective Morman described importing as follows:

> It is a computer program that only a sex offender registration has access to and the State and you have to import it - - you have to have a passcode to get into the program and you go in and once the offender moves to your area. You click on him and import his file to your site and it takes it out of the file of the parish that he was in.

---

[1]Lieutenant Torres was not called to testify.

"[T]hat agency will import him based on him showing up for registration." Detective Morman further stated: "Until they have been imported by the agency, they are still considered ours." She indicated she did not import files until offenders appeared at her office. She testified that Lieutenant Torres made notes indicating Defendant had appeared and told Lieutenant Torres that he had obtained employment in Colfax and was moving there. There was no request to import Defendant back to Pointe Coupee Parish from Grant Parish until 2014.

Detective Morman testified that an offender had three business days to process a change in vehicle, telephone number, residence, work, or any other information. Not reporting such changes would be considered a failure to register. Detective Morman explained that she advises offenders that if they will be anywhere greater than thirty days, that location must be registered as a "residence." She said that a person could have multiple residences.

Detective Morman testified regarding initial reporting and the mailing of notifications, stating:

> You have to do community notifications that uh, send out postcards. Basically, within anywhere from 3/10ths of a mile to a mile radius, depending on if you are in a rural area or a suburban area. Um, and it is going to be based on a number of people in the area on how much it is going to cost to send them out. There is a program available called the uh, Watch System, that sends out the cards for them. And they usually pay that fee out that sends out the cards and make sure that they do not have to worry about that - - any of that it is done and it is covered and it is taken care of. If they fail to do the notifications, then it is a Failure To Register. Any failure to provide that information or to give their notifications, is a Failure To Register. The Sheriff's [sic] of the parish require that they post it in the newspaper notifications so they will have to also post in the newspapers along with the postcards. That all has to be done within twenty-one (21) days. If they fail to meet the twenty-one (21) day mark, it is a Failure To Register. The Sheriff's Office fee has to be paid within thirty (30) days and if they fail to do that, it is a Failure To Register. Everything that they fail to provide or update, all falls under the Failure To Register clause.

11

Detective Morman indicated that Grant Parish issued an arrest warrant for Defendant in March 2014 for failure to register. Defendant was arrested in Morganza on July 29, 2014. According to Detective Morman, Pointe Coupee Parish Sheriff's Office was unaware that Defendant had been residing in Morganza from 2012 to 2014.

On cross-examination, Detective Morman testified regarding the timeline of events in this matter:

-3/13/12     Defendant was released from jail and reported to Pointe Coupee Parish to register.

-3/15/12     Defendant advised by phone that he would be visiting his girlfriend in Colfax who resided at 7198 Highway 71.

-3/31/12     Defendant was arrested in Grant Parish for driving while intoxicated and other driving offenses.

-4/1/12     Defendant bonded out of jail; Pointe Coupee Parish noted that a warrant would be issued for non-compliance.

-4/20/12     Defendant made contact advising he was employed with Ditto Apparel of Colfax and would be living there.

-4/23/12     Defendant contacted Pointe Coupee Parish by phone and stated he had been residing and working in Colfax, Grant Parish, for the last week and would report in person to Grant Parish by the close of business.

-4/25/12     Defendant reported in Grant Parish.

-1/31/13     Defendant was booked in Grant Parish for contempt on a Grant Parish warrant executed in Pointe Coupee Parish at a previously given Williams Lane address in Morganza. Defendant used the Morganza address as his home address at the Grant Parish Detention Center.

-3/8/13     Defendant was released from Grant Parish Detention Center and listed his address as 7198 Highway 71, Colfax.[2]

-2/14/14     Police were told Defendant had moved to Morganza on this date.

---

[2]On that date, Defendant also told his probation officer that his address was 781 Highway 71.

-5/7/14  Police attempted to locate Defendant in Pointe Coupee Parish.

-7/29/14  Defendant was arrested in Pointe Coupee Parish for failure to register in Grant Parish.[3]

-8/1/14  Defendant registered in Pointe Coupee Parish.

Detective Morman testified Defendant was not registered in Pointe Coupee Parish, as he had been imported by Grant Parish, and the Pointe Coupee Parish file had been closed. She said that Defendant was arrested because he never completed his registration in Grant Parish.

*Officer Eric Carter-Grant Parish*

Officer Eric Carter testified that he was employed with the Grant Parish Sheriff's Office. Officer Carter testified that when an offender appeared in person and began the registration process, the offender's file was then imported. After a file was imported, the offender had to comply with registration and notification requirements. According to Officer Carter, importation occurred at the initial registration appearance.

Defendant went to see Officer Carter on April 25, 2012, and stated he was living and working in Grant Parish. Defendant was working at Jordache (Ditto) and provided an address of 7198 Highway 71, Colfax, Louisiana.[4] Defendant reported that he lived at that residence with Siliska Larry. At that time, Officer Carter imported Defendant's file from Pointe Coupee Parish and told him what he needed to do to complete the registration process. According to Officer Carter, Defendant was considered registered in Grant Parish at that time (April 25, 2012), although his registration had not been completed, and he was no longer registered

---

[3]In brief to this court, the State asserts Defendant was arrested on March 31, 2014. However, two witnesses gave the July date as the date of arrest.

[4]Jordache and Ditto refer to the same place.

13

in Pointe Coupee Parish. A sex offender registration form was given by Officer Carter to Defendant on April 23, 2012, beginning the twenty-one days Defendant had to complete his registration. The form was signed by Defendant. The form stated, "I live here and I am registering here." The home address listed by Defendant was 7198 Highway 8, Colfax. Officer Carter was asked, "March of 2014, had he complied with the things he was supposed to comply with, being a Registered Sex Offender in Grant Parish." He responded, "No."

When asked what Defendant needed to do to complete his registration, Officer Carter testified:

> He did not change his address on his identification card, that is required by law. He has to have that card on him at all times. It must have a valid address where he is registered at. He never changed it, it was always the Morganza address. He did not complete the mailers, he did not post his information in the newspaper.

On August 1, 2014, Pointe Coupee Parish Sheriff's Office imported the file back, as Defendant moved back to Morganza and checked in with Pointe Coupee Parish Sheriff's Office to register there.

Officer Carter testified that Defendant failed to register on March 13, 2014, as twenty-one days had passed from his initial registration, which had not been completed.[5] Based on the information given by Defendant, Grant Parish was his parish of residence at that time, listing 7198 Highway 71, Colfax as his address, and a warrant was issued for Defendant's arrest because of his failure to comply.

Officer Carter testified regarding notes that Marie Campbell, a Louisiana State Police employee, entered into the Offender Watch system shortly before the arrest warrant was issued:

> This particular defender [sic] was release [sic] from GPSO jail 3/8/2013 given the address of 7198 Highway 7 - - Highway 8 in

---

[5] No action had been taken by state officials regarding Defendant's failure to complete registration between April 2012 and March 11, 2014.

14

Colfax. Verified offenders current whereabouts and make contact and begin registration notification process and issue a warrant for Failure To Register and that is standard operating procedure. Anytime a [sic] offender is released from custody they are required to check in with the jurisdictional agency, Sheriff's Office.

Officer Carter had not seen Defendant since 2012, and Defendant had not completed his registration. As a result of the Louisiana State Police inquiring about the matter, Grant Parish authorities attempted to contact Defendant at a Colfax address on May 7, 2014. On that date, authorities were informed Defendant had moved back to Morganza.

Officer Carter testified that there were no documents from any law enforcement agency showing Defendant registered as a sex offender between the time he met with Defendant in April 2012 and Defendant's registration in Pointe Coupee Parish in August 2014.

*Keith Delaney-Probation Officer, Grant Parish*

Keith Delaney was a misdemeanor probation officer for the Grant Parish District Attorney's Office. Defendant was placed on misdemeanor probation in Grant Parish on March 8, 2013. Defendant's probation was revoked on July 27, 2015. The original probation form listed Defendant's address as 781 Highway 71, Colfax, Louisiana. That information was provided by Defendant, and he signed the probation form. Defendant never reported a change of address. However, Delaney was notified around May 27, 2015, and given an address in Morganza for service of revocation documents on Defendant.[6] The traffic citation for which Defendant was on probation listed his address as 7198 Highway 71, Colfax, and was issued on March 31, 2012.

At the time Defendant initially reported to Delaney, Defendant was unemployed. On September 29, 2014, Defendant brought a letter verifying

_____

[6]In brief to this court, the State asserts the change of address occurred on May 27, 2014.

15

employment at Nan Ya Plastic Corporation in Batchelor, Louisiana, which was not located in Grant Parish. Defendant's last act regarding his probation was the mailing of a money order for payment on September 10, 2013.

*Defendant's Testimony*

Defendant testified that on March 15, 2012, he told officials in Pointe Coupee Parish that he was going to visit his girlfriend in Colfax at 7198 Highway 71. He testified that he visited his girlfriend for a day or so. Sometime later, he contacted Pointe Coupee Parish Sheriff's Office about obtaining employment at Ditto. He stated he worked there no more than two weeks and stayed with his girlfriend during that time. Defendant further testified that he stayed with her "[o]ff and on I might have come back, to say at the most, about a week or two or a couple of days but I was going back and forth home to back up there, home, back up there." He testified he never stayed with his girlfriend for thirty continuous or alternating days. Defendant said that he subsequently quit his job and returned home to Pointe Coupee Parish because he and his girlfriend were having problems. However, at "the end of the week, we decided to come back together." Defendant was terminated from Ditto on April 27, 2012.

Defendant stated he and his brother owned the residence at 461 Lamb Street in Morganza, and he had lived there for five or six years. Defendant said that in April 2012 he lived across the street from his mother at lot twelve on Williams Lane, also in Morganza. Defendant stated he had two addresses, but he lived on Lamb Street.

He acknowledged that he met with Officer Carter in Grant Parish. Defendant stated that he "registered and I paid one fee and he told me to finish the other fees but I ended up, like I was saying, ended the girlfriend thing and ended up going back home. And I could not finish the registration up here and ended up

16

back in my parish." He indicated he did not realize that because he had met with Officer Carter, his case in Pointe Coupee Parish had been closed. When asked if he thought he was still registered in Pointe Coupee Parish, Defendant stated: "I had no thought of it." When asked to explain to the jury what happened when he registered in Grant Parish, Defendant testified he was on his way home with his girlfriend and got into a car accident. As a result, he was in jail in Pointe Coupee Parish for approximately six months. During that time, he lost contact with her. Defendant said that when he was released from jail, he went to his Pointe Coupee residence, and he did not return to Grant Parish. When he was released from jail, he was contacted about registration and subsequently arrested at work in Pointe Coupee Parish. Defendant claimed he last stayed in Grant Parish in 2012.

Defendant testified that he gave a Colfax address when he bonded out of jail in Grant Parish because the bail bondsman would not bail him out unless he had a Colfax address. He stated he was arrested in 2013 in Pointe Coupee Parish and brought to Grant Parish. When he bonded out, he met with Officer Carter. Defendant said that he lied about his address to the bail bondsman, on the probation form he filled out for Delaney, and to the State Trooper who gave him a traffic citation.

*Siliska Larry's Testimony*

Siliska Larry testified that she had lived at 7198 Highway 71 in Colfax for approximately thirty years. She met Defendant at a casino in Marksville in November 2012.[7] The two later began to date, and Defendant sometimes stayed overnight at her Highway 71 residence in Grant Parish. She testified that Defendant never resided at her residence full-time.

---

[7]We note that the date alleged by Larry occurred approximately seven months after Defendant reported to authorities in Grant Parish.

Larry testified that on April 23, 2012, Defendant got a job at Ditto in Colfax. During that time, Defendant stayed at her residence one to two weeks. Defendant then lost his job and went back to Morganza. Larry said that she wrote her address on documents for Defendant on several occasions. Specifically, on one occasion, the bail bondsman in Colfax would not let Defendant bond out of jail unless he had a Colfax address. Thus, Larry signed the paperwork and listed her address so Defendant could be released. The bond paperwork listed Defendant's address as 7149 Highway 71 even though Larry's address was 7198 Highway 71. That paperwork was dated April 2012, and was not the bond she signed.

Larry stated she took Defendant to register as a sex offender and met with Officer Carter. Defendant gave her address as his place of residence. That occurred while he was looking for a job. The two subsequently split up as the result of a traffic accident. Larry testified the two of them went to visit Defendant's mother in Morganza, and Defendant totaled the truck that belonged to Larry's mother. As a result of the accident, Defendant was arrested. Defendant spent about four months in jail. Larry said this occurred in December, and she did not see Defendant or know he was out of jail until March or April. Larry stated this was in 2013 or 2014. She picked Defendant up from jail and took him to meet his mother. She testified Defendant was incarcerated three or four times in Grant Parish. She was asked if Defendant was incarcerated in Grant Parish in March 2014 and stated: "I think that was the time I signed the bond for him for when he could get out, in 14. I signed the bond paper for him again in March. Because they went and got him in uh, from Morganza and they brought [sic] here. His mom called me." She stated that his Grant Parish registration did not work out because two to three weeks after he "registered," he got arrested in Morganza. He

18

was incarcerated there for three to four months and did not return to Grant Parish. She said Defendant lived in Colfax for three weeks from November to December.

*Patricia Johnson's Testimony*

Patricia Johnson, Defendant's mother, testified that in early 2012, Defendant lived in his home on Lamb Street with his brother. However, she said he lived with her prior to moving to that home. Johnson then stated Defendant moved to Lamb Street in November 2012, and she did not think he ever moved out of that house.

Johnson indicated Defendant did not live in Grant Parish for long, as his job there lasted only two weeks. When asked if Defendant stayed with Larry, she replied, "back and forth."

## DISCUSSION

Defendant first argues he did not actually register in Grant Parish. He then asserts that Officer Carter testified that Defendant's identification card had a Morganza address. Defendant contends that Officer Carter did not testify to any violation of La.R.S. 15:542, as that statute does not state that the identification card must show the address to which the sex offender is moving. It only requires the identification card be produced.

Defendant contends that none of the State's witnesses placed him living or working in Grant Parish on or around March 2014. He claims the testimony indicated he did not work in Grant Parish after April 27, 2012. Defendant further claims the probation paperwork he filled out for Delaney was done no later than March 2013, not March 2014. Defendant contends the date is an essential element of the offense, as the sex offender registration laws set specific periods within which an offender must register depending on the crime that triggers registration. Defendant notes that Detective Morman stated he registered on March 13, 2012,

19

and, other than a change of address, information, job, et cetera, he was not required to register again until March 2013, and he was incarcerated at that time. Defendant also contends there was no evidence he lived or worked in Grant Parish in 2014. Defendant contends that La.R.S. 15:542.1 requires him to notify law enforcement of a change of address, residence, or other registration information. Defendant assumes in brief that this charge was based on his failure to advise Officer Carter that he had returned to Morganza. As to failure to change his address, Defendant claims he did not complete the registration process, and his change of residence occurred before his registration in Grant Parish was complete.

DATE OF THE OFFENSES

In *State v. Watts*, 09-912, pp. 19-20 (La.App. 4 Cir. 6/16/10), 41 So.3d 625, 639, *writ denied*, 10-1685 (La. 1/28/11), 56 So.3d 966, the fourth circuit addressed intent as it relates to sex offender registration as follows:

> La. R.S. 14:8 plainly recognizes that certain conduct is criminal even in the absence of criminal intent. Additionally, La. R.S. 14:11 provides that in some crimes "no intent is required." While offenses that dispose of a scienter requirement are not favored, the United States Supreme Court has noted that the legislatures' authority to define a criminal offense includes the power to "exclude elements of knowledge and diligence from its definition." *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1958). See also *Powell v. Texas,* 392 U.S. 514, 545, 88 S.Ct. 2145, 2160, 20 L.Ed.2d 1254 (1968) (Black, J. concurring) ("[L]egislatures have always been allowed wide freedom to determine the extent to which moral culpability should be a prerequisite to conviction of a crime."). The Louisiana Legislature has determined that specific or general intent is not a necessary element of every crime. La. R.S. 14:8. Therefore, proof of whether the defendant's failure to register as a sex offender was intentional plays no part in determining the defendant's guilt of the instant offense.

In *Flores*, 167 So.3d at 801, the fifth circuit found that a defendant's understanding of what was required of him in order to register under La.R.S. 15:542 was not an element of the charged offense. In this case, Defendant's knowledge about the nuts and bolts of sex offender registration and notification is

20

not relevant to a determination of the sufficiency of the evidence to support his convictions.

*Date in the Bill of Information/Essential Element*

Defendant focuses on the date of the offenses listed in the bill of information, "on or about March 13, 2014." Louisiana Code of Criminal Procedure Article 468 provides:

> The date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense.

> If the date or time is not essential to the offense, an indictment shall not be held insufficient if it does not state the proper date or time, or if it states the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day.

> All allegations of the indictment and bill of particulars shall be considered as referring to the same date or time, unless otherwise stated.

We can find no Louisiana jurisprudence that has specifically addressed whether the date of the offense is an essential element of the offenses charged herein, and none has been cited by the parties. Defendant was required to update his registration yearly if no changes to residence, employment, et cetera occurred before that time. Even if we assume the date was essential to the offense, the jury could have determined that Defendant last lived in Grant Parish on February 14, 2014, approximately one month prior to the date charged in the bill of information, or that Defendant had completed the offenses as of March 13, 2014.

We are more inclined to find that the date of the offenses is not an essential element of the crimes charged herein. In *State v. Goldberg*, 819 So.2d 123 (Ala.Crim.App.2001), the Alabama court held that the defendant's failure to register after changing his address constituted a continuing offense, and had the effect of tolling the three-year limitations period for felony prosecutions. The

Alabama court looked to the legislative intent behind Alabama's sex offender registration and notification requirements.

Failure to comply with the federal Sex Offender Registration and Notification Act, 42 U.S.C. § 16901, *et seq.*, and 18 U.S.C. § 2250, has also been held to be a continuing offense, and the offense commences when the defendant first fails to register and continues until the defendant is either arrested or registers. *See United States v. Pietrantonio*, 637 F.3d 865 (8th Cir.2011).

In La.R.S. 15:540, the Louisiana Legislature set forth the purpose of the sex offender notification and registration statutes as follows:

> A. The legislature finds that sex offenders, sexually violent predators, and child predators often pose a high risk of engaging in sex offenses, and crimes against victims who are minors even after being released from incarceration or commitment and that protection of the public from sex offenders, sexually violent predators, and child predators is of paramount governmental interest. The legislature further finds that local law enforcement officers' efforts to protect their communities, conduct investigations, and quickly apprehend offenders who commit sex offenses and crimes against victims who are minors, are impaired by the lack of information available to law enforcement agencies about convicted sex offenders, sexually violent predators, and child predators who live within the agency's jurisdiction, and the penal and mental health components of our justice system are largely hidden from public view and that lack of information from either may result in failure of both systems to meet this paramount concern of public safety. Restrictive confidentiality and liability laws governing the release of information about sex offenders, sexually violent predators, and child predators have reduced willingness to release information that could be appropriately released under the public disclosure laws, and have increased risks to public safety. Persons found to have committed a sex offense or a crime against a victim who is a minor have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government. Release of information about sex offenders, sexually violent predators, and child predators to public agencies, and under limited circumstances to the general public, will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals.
>
> B. Therefore, this state's policy is to assist local law enforcement agencies' efforts to protect their communities by requiring sex offenders, sexually violent predators, and child predators

22

to register with state and local law enforcement agencies and to require the exchange of relevant information about sex offenders, sexually violent predators, and child predators among state, local, and federal public agencies and officials and to authorize the release of necessary and relevant information about sex offenders, sexually violent predators, and child predators to members of the general public as provided in this Chapter.

In *State v. Stanley*, 49,683 (La.App. 2 Cir. 1/14/15), 161 So.3d 1034, the defendant was charged with failure to pay child support under La.R.S. 14:75.[8] The court discussed the term continuing offense as follows:

> A "continuing offense" has been defined as a continuous, unlawful act or series of acts set in motion by a single impulse and operated by an unintermittent force. *City of Baton Rouge v. Ross*, 94-0695 (La.4/28/95), 654 So.2d 1311; *United States v. Brazell*, 489 F.3d 666 (5th Cir.2007). A defendant's continual willful failure to satisfy his child support debt constitutes a continuing offense. *United States v. Edelkind*, 525 F.3d 388 (5th Cir.2008), *cert denied*, 555 U.S. 908, 129 S.Ct. 246, 172 L.Ed.2d 186 (2008); *Brazell, supra*. A continuing offense, by its very nature, does not terminate until the date of the indictment or the voluntary termination of the illegal activity. *Edelkind, supra*; *United States v. Alvarado-Santilano*, 434 F.3d 794 (5th Cir.2005).

*Id.* at 1038.

In this case, the duty to register as a sex offender is ongoing and fluid with Defendant's changing circumstances, requiring current and updated registration information to be provided to the appropriate agency for the entirety of the period Defendant is obligated to register. The purpose behind Louisiana's sex offender registration and notification scheme is very similar to that set forth by the Alabama Legislature as noted in *Goldberg*. Thus, we agree with the decision in *Goldberg* and find that the offenses charged herein are continuing offenses, and the exact date they are alleged to have occurred is not an element of those offenses.

---

[8]The statute provides that it is unlawful for "any obligor to intentionally fail to pay a support obligation for any child who resides in the state of Louisiana, if such obligation has remained unpaid for a period longer than six months or is greater than two thousand five hundred dollars."

## CONVICTIONS

We will now address whether the State proved, beyond a reasonable doubt, that Defendant failed to register in Grant Parish, failed to notify law enforcement of a change of address, and failed to provide notification as a sex offender.

FAILURE TO REGISTER

Both Detective Morman and Officer Carter testified that Defendant failed to complete his sex offender registration in Grant Parish in April 2012. Officer Carter indicated that he gave Defendant a list of things he had to do in order to complete the registration, and Defendant failed to do them. Officer Carter did not testify as to the specific contents of that list, and the list, if written, was not admitted into evidence at trial.

In *Flores*, 167 So.3d 801, the defendant never completed his sex offender registration requirements beyond signing the sex offender contract in May 2009. The fifth circuit concluded, therefore, at no time was the defendant compliant with La.R.S. 15:542. *Flores* is distinguishable from the case at bar, as Flores was merely charged with a single count for his failure to complete his sex offender registration, and Defendant is charged with several violations of the sex offender registration and notification requirements. Accordingly, the State would need to present evidence regarding exactly what Defendant failed to do in order to prove a violation of La.R.S. 15:542 for failure to complete his sex offender registration.

The following was part of an answer to a question posed to Detective Morman:

> As of this date, [Defendant] as [sic] yet to send out mailers and post publication in local newspaper. [Defendant] is non-compliant and has failed to complete registration with this agency. [Defendant's] ID card still list [sic] address in Morganza. Warrant applied for [Defendant] til this day has yet to pay registration fee since his arrival here.

24

Additionally, Officer Carter testified that, to complete his registration, Defendant needed to change his address on his identification card, send out mailers, and post his information in the newspaper.

The failure to send out mailers and post notice in the local newspaper cannot support a conviction for failure to register in this case, as Defendant was charged in count three with failure to provide notification as a sex offender, a crime separate from failing to register. Additionally, there is no requirement in La.R.S. 15:542 or La.R.S. 15:542.1.2 that Defendant update the information on his identification card upon changing his residence. According to La.R.S. 15:542(j), Defendant need only produce an identification card. Louisiana Revised Statutes 40:1321 governs identification cards for sex offenders and provides in pertinent part:

> J. (1) Any person required to register as a sex offender with the Louisiana Bureau of Criminal Identification and Information, as required by R.S. 15:542 *et seq.*, shall obtain a special identification card issued by the Department of Public Safety and Corrections which shall contain a restriction code declaring that the holder is a sex offender. This special identification card shall include the words "sex offender" in all capital letters which are orange in color and shall be valid for a period of one year from the date of issuance. This special identification card shall be carried on the person at all times by the individual required to register as a sex offender.
>
> (2) Each person required to carry a special identification card pursuant to this Subsection shall personally appear, annually, at a field office of the office of motor vehicles to renew his or her special identification card but only after he or she has registered as an offender pursuant to R.S. 15:542 *et seq.* Reregistration shall include the submission of current information to the department and the verification of this information, which shall include the street address and telephone number of the registrant; the name, street address and telephone number of the registrant's employer, and any registration information that may need to be verified by the bureau. No special identification card shall be issued or renewed until the office of motor vehicles receives confirmation from the bureau, electronically or by other means, that the reregistration of the sex offender has been completed.

(3) The provisions of this Subsection shall apply to all sex offenders required to register pursuant to R.S. 15:542 *et seq.*, regardless of the date of conviction.

(4) Whoever violates this Subsection shall be fined not less than one hundred dollars and not more than five hundred dollars, or imprisoned for not more than six months, or both.

Louisiana Revised Statutes 15:542(D) requires a sex offender to pay a registration fee of sixty dollars to the appropriate law enforcement agencies with whom he is required to register upon the initial registration and on the anniversary thereof.

We conclude that Defendant's failure to pay the fee within thirty days of initial registration constitutes a failure to register and subjects Defendant to prosecution under the provisions of La.R.S. 15:542.1.4(A)(3). The testimony presented proves beyond a reasonable doubt that Defendant failed to pay the registration fee to the appropriate law enforcement agency. Thus, his conviction for failure to register should be affirmed. However, Defendant was sentenced to three years at hard labor for this offense. Louisiana Revised Statutes 15:542.1.4(A)(3) calls for a fine of not less than one hundred dollars and not more than five hundred dollars, or imprisonment for not more than six months, or both. Thus, Defendant's sentence is clearly illegal, as it exceeds the maximum sentence allowed under the applicable sentencing provision. Accordingly, Defendant's sentence for failure to register as a sex offender pursuant to La.R.S. 15:542 is vacated, and the matter is remanded to the trial court for resentencing for this offense.

FAILURE TO NOTIFY LAW ENFORCEMENT OF A CHANGE OF ADDRESS

The State asserts that Defendant failed to notify of a change of address by 1) not appearing in Grant Parish in 2013 to update his registration information; 2) not

notifying Grant Parish that he had returned to Pointe Coupee Parish; and 3) not changing the address on his identification card to reflect his Grant Parish address.

In brief, Defendant assumes that this charge was based on his failure to advise Officer Carter that he had returned to Morganza. Defendant claims he did not complete the registration process, and his change of residence occurred before his registration in Grant Parish was complete.

Based on the evidence presented, the jury could have found the State proved beyond a reasonable doubt that Defendant resided in Grant Parish and failed to provide Grant Parish authorities with notice of his change of address when he returned to Pointe Coupee Parish.

Failure to periodically renew sex offender registration is governed by La.R.S. 15:542.1.1, and subsection (A)(3) requires Defendant to renew his registration annually. Defendant was not charged with a violation of La.R.S. 15:542.1.1. Thus, his failure to periodically renew could not be a basis for the charged offense.

As for the State's assertion that Defendant failed to change the address on his identification card, there is no requirement in La.R.S. 15:542 or La.R.S. 15:542.1.2 that Defendant update the information on his identification card upon changing residence. As previously noted, Defendant need only produce an identification card, and Defendant was not charged with failing to update that card.

FAILED TO PROVIDE NOTIFICATION AS A SEX OFFENDER

Because the uncontradicted evidence shows that Defendant never sent out the notifications required by La.R.S. 15:542.1, we conclude that the State proved beyond a reasonable doubt that Defendant violated the requirements of that statute.

Defendant's convictions as well as his sentences for failure to notify law enforcement of a change of address pursuant to La.R.S. 15:542.1.2 and failure to

27

provide notification as a sex offender pursuant to La.R.S. 15:542.1 are affirmed. However, although Defendant's conviction for failure to register pursuant to La.R.S. 15:542 is affirmed, Defendant's sentence for failure to register as a sex offender is vacated and the matter remanded for resentencing.

## ASSIGNMENT OF ERROR NUMBER ONE

*Ineffective Assistance of Counsel*

In his first assignment of error, Defendant contends that he received assistance of counsel below that guaranteed by the Sixth Amendment to the United States Constitution because counsel failed to seek quashal of the bill of information and failed to object to erroneous jury instructions.

> A criminal defendant is guaranteed the effective assistance of counsel. United States Sixth Amendment; La. Const. art. I, § 13; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Washington*, 491 So.2d 1337 (La.1986). To establish a claim of ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, that counsel's professional errors resulted in prejudice to the extent that it undermined the functioning of the adversarial process and rendered the verdict suspect. *Strickland v. Washington*, *supra*; *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). This does not mean "errorless counsel [or] counsel judged ineffective by hindsight, but counsel reasonably likely to render effective assistance." *State v. Ratcliff*, 416 So.2d 528, 531 (La.1982).

> A claim of ineffectiveness is generally relegated to post-conviction, unless the record permits definitive resolution on appeal. *E.g.*, *State v. Prudholm*, 446 So.2d 729 (La.1984). However, when the record is sufficient for review, this Court will reach the merits of complaints about counsel's performance and grant relief when appropriate. *E.g.*, *State v. Hamilton*, 92-2639 (La.7/1/97), 699 So.2d 29, 32-35.

*State v. Bright*, 98-398, pp. 40-41 (La. 4/11/00), 776 So.2d 1134, 1157, *rev'd on other grounds*, 02-2793, 03-2796 (La. 5/25/04), 875 So.2d 37.

The record is sufficient to review Defendant's claims.

VENUE

After the jury was sworn but before opening statements, the State asserted there may be an issue as to venue. Defense counsel stated he would be asserting a challenge as to whether failure to register occurred in Grant Parish or whether it occurred in Pointe Coupee Parish. The State responded it was not sure that there was an issue as to venue, and, if there was, improper venue was to be brought via motion to quash. The trial court stated there was going to be a factual issue as to whether Grant Parish became Defendant's "residence or changed employment." The trial court further indicated there was no question that Defendant was not being tried for anything that occurred in Pointe Coupee Parish, and the State had filed a bill of information that was properly triable in Grant Parish. The trial court concluded, "[n]ow whether the State can prove a change of residence or employment that triggers the offense, I do not know." The trial court decided the issue was one for the jury.

In *State v. Thompson*, 12-1097 (La.App. 3 Cir. 4/10/13), 111 So.3d 580, *writ denied*, 13-1067 (La. 11/15/13), 125 So.3d 1102, *cert. denied*, __ U.S. __, 134 S.Ct. 1942 (2014), this court stated that because the defendant did not file a motion to quash, he did not preserve the issue of jurisdiction and venue for review on appeal. Defendant contends defense counsel erred in failing to file a pre-trial motion to quash the bill of information on the basis of lack of venue in Grant Parish. Defendant points out the issue was not brought up by defense counsel but by the State after the jury was selected, and appellate courts have held that venue issues not raised pre-trial are not reviewable. However, Defendant alleges ineffective assistance of counsel. Therefore, we will review his claim.

A defendant is guaranteed the right to "a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue

is changed in accordance with law." La.Const. art. 1, § 16. Louisiana Code of Criminal Procedure Article 611(A) provides for venue as follows:

> All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.

Louisiana Code of Criminal Procedure Article 615 discusses improper venue:

> Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.

Defendant alleges that since he did not complete his registration in Grant Parish, he did not know he was obligated to notify Grant Parish of his return to Pointe Coupee Parish. Further, Defendant states that as of March 13, 2014, he had been living for almost two years in Morganza in the home he shared with his brother. He contends that there was no evidence to refute testimony by himself, Larry, and Johnson that he returned to Pointe Coupee Parish shortly after he reported in Grant Parish.[9] Therefore, Defendant argues that defense counsel erred in failing to file a motion to quash the bill of information.

The State asserts that improper venue may not be raised for the first time on appeal as per *State v. Fontenot*, 95-459, (La.App. 3 Cir. 11/2/95), 664 So.2d 523, *rev'd in part on other grounds*, 95-2920 (La. 5/31/96), 675 So.2d 271. The State further notes that in *State v. Mueller*, 10-710 (La.App. 4 Cir. 12/8/10), 53 So.3d 677, the defendant argued that the State failed to prove that the offense occurred in Orleans Parish because he was residing in Jefferson Parish at the time that registry checks were conducted. The defendant in *Mueller* alleged that the trial court did

---

[9]We note that Johnson is referred to as Jones in Defendant's brief.

not have jurisdiction over the case.  The fourth circuit found that because the defendant had not filed a pre-trial motion to quash, his claim of improper venue was not reviewable.

The State asserts venue was proper in Grant Parish because Defendant was required to register in Grant Parish when he moved and began working there.  We conclude that the jury could reasonably have determined that Defendant resided in Grant Parish until some time in February 2014.  Thus, defense counsel was not ineffective for failing to file a motion to quash based on improper venue.

INCORRECT CITATION IN THE BILL OF INFORMATION & DOUBLE JEOPARDY

*Bill of Information*

Defendant was charged with three offenses, which were listed in the bill of information as violations of La.R.S. 15:542, La.R.S. 15:542.1.2, and La.R.S. 15:542.1.  Defendant alleges the bill of information did not provide specific details as to any of those offenses and was flawed.  He cites *State v. Young*, 46,575 (La.App. 2 Cir. 9/21/11), 73 So.3d 473, *writ denied*, 11-2304 (La. 3/9/12), 84 So.3d 550, in support of his arguments.  In *Young*, the second circuit noted that even though the defendant was charged and pled guilty to a violation of La.R.S. 15:542, La.R.S. 15:542.1.4 was actually the statute that contained the language making it a crime to fail to register as a sex offender and contained the applicable penalty provision.  The defendant did not complain of surprise or prejudice.  The second circuit stated:  "However, even when the bill of information supplies the completely wrong section number or statute, the conviction is upheld if the defendant was given fair notice and identity of the offense and does not claim surprise or prejudice." *Id.* at 475-76 n.2.

31

Defendant avers he should have been charged, at most, with one offense under La.R.S. 15:542.1.4. Defendant claims he was prejudiced by the State's use of the wrong statutes in the bill of information.

Defendant also claims that multiple charges for failure to register and provide notification for the same timeframe constitutes double jeopardy, and the issue should have been asserted prior to trial in a motion to quash. He contends counsel's failure to file a motion to quash resulted in him being convicted of three felony offenses.

Louisiana Code of Criminal Procedure Article 464 provides:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

In *State v. Olivia*, 13-496 (La.App. 4 Cir. 3/26/14), 137 So.3d 752, *writ denied*, 14-884 (La. 11/14/14), 152 So.3d 879, the defendant was charged with first degree vehicular negligent injuring, but the bill of information did not contain the statute number for that offense. The fourth circuit addressed the defect in the bill of information as follows:

> Pursuant to La.C.Cr.P. art. 464, the omission of the citation will not be ground for dismissal if the omission did not mislead Ms. Olivia to her prejudice. The bill of information plainly demonstrates the State charged Ms. Olivia with "First Degree Vehicular Negligent Injuring," and Ms. Olivia could have easily determined which statute she was charged with violating by referencing the Louisiana Criminal Code. Therefore, the bill of information charged Ms. Olivia with an offense punishable under La. R.S. 14:39.2, a valid statute.

*Id.* at 755.

The bill of information in the case at bar provided more information than that in *Olivia*. Herein, the State listed the statutes setting forth the sex offender

registration and notification requirements Defendant allegedly failed to comply with. Thus, we conclude that the bill of information informed Defendant of the charges against him.

Defendant makes no claim that he did not understand the charges against him or of surprise based on the failure of the State to list La.R.S. 15:542.1.4 in the bill of information. Based on La.Code Crim.P. art. 464 and the ruling in *Olivia*, that failure to list La.R.S. 15:542.1.4 in the bill was harmless despite Defendant's claim of prejudice.

The prejudice alleged by Defendant is connected to his claim that prosecution for the three offenses charged herein constituted double jeopardy. Thus, we will now address that double jeopardy claim.

*Double Jeopardy*

In *State v. Lodge*, 15-538 (La.App. 4 Cir. 5/25/16), 195 So.3d 567, the defendant was charged with failure to register as a sex offender, a violation of La.R.S. 15:542, and failure to periodically renew said registration, a violation of La.R.S. 15:542.1.1. The defendant filed a motion to quash, alleging double jeopardy. The fourth circuit addressed the issue, stating:

> The Fifth Amendment to the U.S. Constitution and La. Const. Art. I, § 15 guarantees that no person shall be placed twice in jeopardy for the same offense. "This guarantee protects against a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *State v. Childs*, 13-0948, p. 2 (La.App. 4 Cir. 1/15/14), 133 So.3d 104, 105, (*citing State v. Smith*, 95-0061, p. 3 (La.7/2/96), 676 So.2d 1068, 1069.
>
> . . . .
>
> Louisiana Courts use two tests to determine whether double jeopardy exists: 1) the *Blockburger* test established *by Blockburger v*[.] *U.S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and 2) the "same evidence test", established by *State v. Steele*, 387 So.2d 1175 (La.1980). *Childs*, 13-0948, p. 2, 133 So.3d at 106. Under the *Blockburger* test:

33

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger*, 284 U.S. at 304, 52 S.Ct. at 180.

> Under the "same evidence test:"

> If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.

*Steele*, 387 So.2d at 1177.

> The same evidence test "considers the actual physical and testimonial evidence necessary to secure a conviction, and concerns itself with the 'evidential focus' of the facts adduced at trial in light of the verdict rendered, i.e., how the evidence satisfies the prosecution's burden of proof." *State v. Williams*, 07-0931, p. 5 (La.2/26/08), 978 So.2d 895, 897 (*citing State v. Coody*, 448 So.2d 100, 102-03 (La.1984).

*Id.* at 569-570.

> The fourth circuit held:

> Thus, the defendant committed two separate offenses that are based on different facts that are criminalized by two different statutes. These separate offenses occurred at two different times that were over a year apart. The offenses the defendant pled guilty to were based upon separate and distinct facts and circumstances, and prosecuting him for these offenses does not violate double jeopardy under either the *Blockburger* test or the "same evidence" test.

*Id.* at 570.

Defendant was charged with failure to register, which, according to the evidence presented, occurred when Defendant did not pay the initial registration fee that was due within thirty days of his registration in Grant Parish. *See* La.R.S. 15:542(D). Defendant was charged with failure to provide notification to the public, which could not have occurred until the twenty-second day after Defendant

34

reported in Grant Parish. *See* La.R.S. 15:542.1(A)(2). Defendant was also charged with failure to notify Grant Parish of his change of address, which could not have occurred until the fourth business day after Defendant reestablished a residence in Pointe Coupee Parish. *See* La.R.S. 15:542.1.2(C)(1). Each of the acts Defendant failed to perform is governed by a different statute, each failure to act occurred on different dates, each offense requires proof of a fact that the others do not, and the offenses are not supported by the same evidence. Accordingly, as in *Lodge*, prosecuting Defendant for multiple violations of the sex offender registration and notification requirements did not constitute double jeopardy. Further, defense counsel was not ineffective for failing to file a motion to quash the bill of information.

INCORRECT JURY INSTRUCTIONS

Pursuant to La.Code Crim.P. art. 802(1), the court shall charge the jury "[a]s to the law applicable to the case."

> A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.

La.Code Crim.P. art. 801(C).

In the case at bar, the trial court advised the jury that attempted failure to register as a sex offender, attempted failure to notify law enforcement of a change of address, and attempted failure to provide notification as a sex offender were responsive verdicts to the charged offenses. There were no objections by defense counsel to these instructions.

As noted by Defendant, in *State v. Williams*, 47,242 (La.App. 2 Cir. 7/18/12), 103 So.3d 412, the second circuit concluded that failure to register is an

35

act of omission. "Thus, an attempt was a legal impossibility." *Id.* at 413. The court further stated: "There is no such crime as an attempt to not register as a sex offender. The crime of failure to register is not a specific intent crime. One either fails to register or not. One cannot attempt to not register." *Id.* at 414. Defendant herein contends the same would be true for failure to notify law enforcement of a change of address and failure to provide notification as a sex offender. Defendant contends that because counsel did not object to the inclusion of the improper responsive verdicts in the jury instructions, counsel's representation fell below that guaranteed by the Sixth Amendment to the United States Constitution. Defendant argues he was prejudiced because, as a result of counsel's inaction, he stands convicted of three felonies.

However, as noted by the State, *Williams* is distinguishable in that the defendant therein entered a plea of guilty to attempted failure to register as a sex offender. In this case, Defendant was found guilty as charged. Accordingly, the inclusion of improper responsive verdicts is moot.

Defendant's counsel was deficient in his failure to object to the erroneous jury instructions. Such failure did not, however, prejudice Defendant. In *State v. Wright*, 598 So.2d 493 (La.App. 2 Cir. 1992), the second circuit addressed the trial court's inclusion of attempted possession of stolen things having a value of $500 or more when there was no such responsive verdict. The proper responsive verdict was attempted possession of stolen things having a value of $100 or more. The second circuit noted that counsel was deficient in failing to object to the erroneous instruction providing the improper responsive verdict. The court then addressed prejudice, stating: "In assessing prejudice in such a case, the basic question is whether there is a reasonable probability that, absent the error, the result of the proceeding would have been different. A reasonable probability is a probability

36

sufficient to undermine confidence in the outcome of the trial." *Id.* at 498. As to the improper inclusion of attempted illegal possession of stolen things in excess of $500 as a responsive verdict, the second circuit concluded the jury was presented with ample evidence of the value of the stolen item, and the verdict of guilty of illegal possession of stolen things was statutorily proper. The court did not deem the jury's verdict "subverted by unreliability due to counsel error." *Id.* at 499.

In *State v. Reese*, 472 So.2d 76 (La.App. 5 Cir. 1985), the defendant was charged with aggravated rape. The trial court improperly included simple rape as a responsive verdict to the charged offense. The fifth circuit stated: "Failure to give the statutorily accurate responsive verdicts, however, is not a spontaneous reversible error. An appellant must show that the inclusion or exclusion of an inappropriate lesser verdict was prejudicial and that fundamental due process had been violated." *Id.* at 77-78. The court noted the defendant was found guilty as charged and found no prejudice or denial of due process.

The evidence in this case was sufficient to support the jury's verdicts, and those verdicts were statutorily proper. Accordingly, although defense counsel may have been deficient in failing to object to the inclusion of the improper responsive verdict, Defendant has failed to prove he was prejudiced by that inclusion.

Defendant also asserts it was improper for the trial court to advise the jury to return three separate verdicts. For the reasons set forth in the double jeopardy analysis, we conclude that this issue has no merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In this assignment of error, Defendant alleges the trial court improperly commented on evidence by questioning a witness, Officer Carter, in the jury's presence and without the consent of the accused. Following defense counsel's cross-examination of Officer Carter, the trial court questioned the officer about

how Defendant was supposed to accomplish the requirements necessary to complete his registration. Defendant argues the trial court's questioning of Officer Carter was an improper comment on the evidence, which is prohibited by La.Code Crim.P. art. 772. That article provides:

> The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.

As Defendant also notes, the trial court was required to obtain the consent of all parties prior to questioning the witness as set forth in La.Code Evid. art. 614:

> **A. Calling by court.** The court, at the request of a party or if otherwise authorized by legislation, may call witnesses, and all parties are entitled to examine witnesses thus called.
>
> **B. Questioning by court.** The court may question witnesses, whether called by itself or by a party.
>
> **C. Objections.** Objections to the calling of witnesses by the court or to questioning of witnesses by it may be made at the time or at the next available opportunity when the jury is not present.
>
> **D. Exception.** In a jury trial, the court may not call or examine a witness, except upon the express consent of all parties, which consent shall not be requested within the hearing of the jury.

No consent was obtained by the trial court prior to questioning Officer Carter.

*Lack of Objection*

Defendant did not lodge an objection to the questioning of Officer Carter either at the time of the trial court's questioning or at any time thereafter, as required by La.Code Evid. art. 614(C). *See also* La.Code Crim.P. art. 841(A). In *State v. Camper,* 08-314, (La.App. 4 Cir. 10/1/08), 996 So.2d 571, the fourth circuit found the lack of a contemporaneous objection prohibited its review of the defendant's complaint that the trial court violated the no-comment rule. The court stated that "the defense failed to object to the trial judge's remark and, thus, this issue ha[d] not been preserved for appellate review." *Id.* at 579. Louisiana Code

of Criminal Procedure Article 841(A), in pertinent part, provides: "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

Defendant argues that a contemporaneous objection was not necessary to preserve the issue in the present case. According to Defendant, in *State v. Thomas*, 12-1458 (La.App. 3 Cir. 6/5/13), 114 So.3d 684, this court found the lack of a contemporaneous objection did not preclude review of the trial court's erroneous questioning of a witness since La.Code Evid. art. 614(C) is permissive rather than mandatory and since the questioning of the witness was fundamentally unfair and prejudicial to Thomas. We find that *Thomas* is distinguishable from the present case and does not preclude the application of the contemporaneous objection rule in this case. In *Thomas*, the trial court questioned three different witnesses. Failing to object to the trial court's questioning of the first two witnesses, defense counsel finally objected when the trial court questioned the third witness. The court in *Thomas* stated the following regarding the preservation of the issue for review:

> [W]hile Thomas did not object the first two times the judge interjected himself to question the prosecution's witnesses, he did object the third time it occurred. "Objections to the calling of witnesses by the court or to questioning of witnesses by it *may* be made *at the time or at the next available opportunity when the jury is not present*." La.Code Crim.P. art. 614(C). In this case, there was no recess between the testimonies at issue. The State does not address the timeliness of the defendant's objection. We find that the objection was preserved for this appeal. Moreover, Article 614(C) uses the permissive "may" instead of the mandatory "shall." In a case such as this which mandates a life sentence, and where the error was so fundamentally unfair and prejudicial to the defendant, no contemporaneous objection was necessary. *See State v. Colligan*, 95-880 (La.App. 3 Cir. 8/7/96), 679 So.2d 184.

*Id.* at 691. Unlike in *Thomas*, no objection was lodged in the present case even though there was opportunity to do so. Additionally, the present case is not a life

39

sentence case, and the trial court's questioning in the present case was neither fundamentally unfair nor prejudicial to Defendant. Thus, Defendant's failure to object to the trial court's questioning of Officer Carter precludes appellate review of this error. La.Code Evid. art. 614(C) and La.Code Crim.P. art. 841(A).

## DECREE

Defendant's convictions are affirmed. His sentences for failure to notify law enforcement of a change of address and failure to provide notification as a sex offender are also affirmed. However, his sentence for failure to register is vacated, and the matter is remanded for resentencing.

**CONVICTIONS AFFIRMED;**

**SENTENCES FOR VIOLATIONS OF LA.R.S. 15:542.1 AND LA.R.S. 15:542.1.2 ARE AFFIRMED;**

**SENTENCE FOR VIOLATION OF LA.R.S. 15:542 IS VACATED; REMANDED FOR RESENTENCING.**